IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FRANKLIN ROBERT ELKINS, § | |
|     Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:07-CV-047-Y |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
|     Respondent. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28 of the United States Code § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

B. PARTIES

Petitioner Franklin Robert Elkins, TDCJ-ID #1240284, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, and is presently incarcerated in Huntsville, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

C. FACTUAL AND PROCEDURE HISTORY

In 2002 Elkins was charged by indictment with intoxication manslaughter in case number 0842389 in the Criminal District Court Number Two of Tarrant County, Texas. (Clerk's R. at 2.) The indictment also included a repeat offender notice alleging a prior 1998 felony conviction for burglary of a vehicle. (*Id.*)

The evidence at trial reflected that at approximately 3:30 p.m. on April 16, 2002, Elkins's car struck a car driven by Hector Vitolas at the intersection of Bird Street and Riverside Drive in Fort Worth. (6Reporter's R. at 6, 10.) Vitolas's car came to rest in the front yard of a residence. (*Id.* at 10.) Elkins was sitting on the front step of the residence when law enforcement officers and paramedics arrived. (*Id*. at 13, 40, 68-69.) One or more of the responding officers and paramedics testified regarding Elkins's demeanor, including testimony that there was a strong odor of beer on Elkins's breath and in his car and that Elkins appeared dirty and unkempt, his speech was slurred, his eyes were bloodshot and watery, he had difficulty standing, he was uncooperative, and he appeared intoxicated. (*Id.* at 19-20, 42-43, 44-45, 47, 73, 113, 179, 204.) Elkins admitted to the police officers and/or paramedics that he had several beers that day. (*Id.* at 72, 101, 113, 182.) The officers conducted no field sobriety tests at the scene due to Elkins's demeanor and the possibility that he had been injured in the accident. (*Id.* at 56-57.) Vitolas's passenger Eliana Salas died at the scene of the accident as a result of injuries sustained in the collision. (*Id.* at 12.)

Elkins and Vitolas were transported to the hospital where Vitolas was pronounced dead. (*Id.* at 20.) Hospital personnel testified that Elkins appeared very intoxicated and was uncooperative and belligerent. (*Id.* at 163, 223-24.) Samples of blood were drawn from Elkins at 4:30 p.m. for medical purposes and at 5:50 p.m. for law enforcement. (*Id.* at 169, 202, 220.) The results of the hospital's

2

analysis indicated that at 4:30 p.m. Elkins had a .28 blood alcohol level. (7Reporter's R. at 12-13.) The results of the anaylsis by the medical examiner's office indicated that at 5:50 p.m. Elkins had a .22 blood alcohol level, nearly three times the legal limit of .08. (*Id.* at 31.) The state introduced expert, retrograde-extrapolation evidence, over Elkins's objection, and evidence that Elkins was in excess of the posted speed limit when the accident occurred. (*Id.* at 98-146; 7Reporter's R. at 41-58, 141-65.)

Based on the evidence, the jury found Elkins guilty of the charged offense and found he had been previously convicted of the felony offense alleged in the repeat offender notice. (*Id.* at 261, 268.) The jury assessed his punishment at thirty years' confinement. (*Id.* at 91.) Elkins appealed his conviction, but the Second District Court of Appeals affirmed the trial court's judgment on November 17, 2005. *Elkins v. Texas*, No. 2-04-243-CR, slip copy (Tex. App.–Fort Worth Nov. 17, 2005) (not designated for publication). On September 13, 2006, the Texas Court of Criminal Appeals refused Elkins's petition for discretionary review. *Elkin v. Texas*, PDR No. 264-06. Elkins also sought postconviction state habeas relief to no avail. *Ex parte Elkin*, Application No. 66,320-01. Elkins filed this federal petition for writ of habeas corpus on January 17, 2007. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing).

D. ISSUES

Elkins raises the following issues in four grounds for relief:

1. There is no evidence or insufficient evidence that he was intoxicated at the time of the accident;

2. Hector Vitolas's failure to yield the right of way was the major cause of the accident;

3. His sentence is cruel and unusual because it was enhanced on the basis of a prior felony conviction for an offense that was reclassified as a misdemeanor; and

4. The evidence regarding retrograde extrapolation was improperly admitted. (Petition at 7-8.)

E. RULE 5 STATEMENT

Quarterman believes that Elkins has sufficiently exhausted available state remedies as required by 28 U.S.C. § 2254(b)(1). (Resp't Answer at 4.)

F. DISCUSSION

*1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d

at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Accordingly, as a federal habeas court, we are bound by the state court's factual findings, both implicit and explicit. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Sufficiency of the Evidence*

Elkins claims that there was no evidence or insufficient evidence that he was intoxicated at the time of the accident. (Petition at 7; Pet'r Memorandum at 6.) Quarterman asserts this claim is procedurally barred from federal review.

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting the factual and legal substance of a claim to

5

the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon 2005); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Elkins raised his sufficiency-of-the-evidence claim for the first time in his state habeas application. Although the Texas Court of Criminal Appeals stated no reasons when it denied his habeas application, that court has long held that the sufficiency of the evidence may only be raised on direct appeal and may not be raised in a state habeas proceeding. *See West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). Indeed, the court in *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004), reaffirmed that where a state habeas applicant challenges the sufficiency of the evidence in a state habeas application and the court subsequently disposes of the application by entering a denial without written order, the applicant's sufficiency claim was denied because it was not cognizable. This procedural default in state court is an adequate state procedural ground barring federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801- 07 (1991). Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Elkins's sufficiency claim is procedurally barred from this court's review. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001).

    *3. Jury Instructions*

Elkins claims the trial court erred by not including a definition or special instructions in the jury charge regarding a driver's duty to yield the right of way, in light of the fact that Vitolas's

failure to yield the right of way was a major cause of the accident. (Petition at 7; Pet'r Memorandum at 6.) Elkins raised this claim involving concurrent causation on direct appeal and in his state habeas application. *See* TEX. PENAL CODE ANN. § 6.04 (Vernon 2003).

> Applying applicable state law, the appellate court addressed the issue as follows:
>
> An accused is entitled to an instruction on every defensive issue raised by the evidence. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993). For concurrent causation to be raised by the evidence, there must be evidence both that a concurrent cause was sufficient to cause the result and that the conduct of the defendant was clearly insufficient to cause the result. *See Hutcheson v. State*, 899 S.w.2d 39, 42 (Tex. App.–Amarillo 1995, pet. ref'd).
> In this case, the record contains no evidence that Vitolas's failure to yield the right of way was, by itself, sufficient to cause the accident. Therefore, the trial court did not err by refusing to submit to the jury a definition or special instructions regarding a driver's duty to yield the right of way.

*Elkins*, No. 2-04-243-CR, slip copy at 4. In turn, the Texas Court of Criminal Appeals rejected the claim by denying both Elkins's petition for discretionary review and state habeas application. The court's denial constitutes an adjudication on the merits of the claim.

Elkins has failed to cite to Supreme Court precedent directly on point, and none is found. Thus, he cannot satisfy his burden to demonstrate that the state courts' determination of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law on the issue nor has he demonstrated a substantial and injurious effect or influence on the jury's verdict as a result of the trial court's failure to give the requested definition and special instructions. 28 U.S.C. § 2254(d); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1992). The state courts' decision appears reasonable in light of the evidence presented at Elkins's trial. Moreover, as noted by Quarterman, the jury did receive the following instruction, which gave them the option of considering whether any concurrent conduct was sufficient to produce the result:

> A person is criminally responsible if the result would not have occurred but for his

conduct, operating either alone or concurrently with another cause, unless the concurrent conduct was sufficient to produce and his conduct was clearly insufficient to produce the result. (Clerk's R. at 253-54.)

*4. Cruel and Unusual Punishment*

Elkins claims his 30-year sentence is cruel and unusual because it was illegally enhanced under the state's recidivist statute. (Petition at 8; Pet'r Memorandum at 7.) U.S. CONST. amend. 8. Elkins asserts that, although at the time he committed and was placed on deferred adjudication for the burglary-of-a-vehicle offense in 1991 it was classified as a felony, upon revocation of his deferred adjudication and sentencing in 1998, the offense had been reclassified by the state legislature as a misdemeanor, and the trial court assessed a misdemeanor punishment.[1] Thus, he argues, the conviction should not have been used to enhance his sentence in this case under Texas's sentence-enhancement statutory provisions. TEX. PENAL CODE ANN. § 12.42 (Vernon 2005).

As noted by the state appellate court, a savings provision accompanied the amendments in 1993 providing that the change in law applied only to an offense committed on or after September 1, 1994, the effective date of the law, and that an offense committed before the effective date of the law is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. *Elkins*, No. 2-04-243-CR, slip copy, at 5-6. Citing *Rummel v. Estelle*, 445 U.S. 263, 274 (1980), and other Supreme Court precedent, the appellate court recognized that the length of sentence imposed for a felony is "purely a matter of legislative prerogative." *Elkins*, slip

---

[1] His claim that he received a misdemeanor punishment for the offense in support of his claim is of no moment. Under the law in effect when he committed the burglary-of-a-vehicle offense, the trial court had the discretion to reduce the punishment for a third degree felony to that of a Class A misdemeanor under state law. (12Reporter's R, State's Exh. 50.) *Elkins*, No. 2-04-243-CR, slip copy at 6 n.5. In fact, the 1998 judgment adjudicating his guilt expressly states: "Punishment reduced at time of adjudication hearing to a class A misdemeanor under article 12.44(a), Texas Penal Code."

8

copy, at 7.  Indeed, the Supreme Court has sustained the constitutionality of state promulgated sentence-enhancement statutes against contentions that such statutes violate the prohibition against cruel and unusual punishment.  *See Spencer v. Texas*, 385 U.S. 554, 560 (1967).

Thus, because the state satisfied the requirements of § 12.42(b), the jury was authorized to assess Elkins's punishment within the range of punishment for that of a first degree felony–imprisonment for 5 to 99 years or life.  TEX. PENAL CODE ANN. §§ 12.32, 12.42(b), 49.08 (Vernon 2003).  His 30-year sentence is not grossly disproportionate to the gravity of the offense and therefore does not violate the prohibition on cruel and unusual punishments.  *See Ewing v. California*, 538 U.S. 11, 20-31 (2003);  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

*5. Retrograde Extrapolation Evidence*

Elkins claims the trial court erred by allowing evidence of retrograde extrapolation because, in the absence of all necessary information to perform such an analysis, the evidence was unreliable and more prejudicial than probative.  *See* TEX. R. EVID. 403, 702.  Applying applicable state law on the issue, the state appellate court determined that the trial court could have reasonably concluded the expert testimony on retrograde extrapolation was both relevant and reliable and not more prejudicial than probative.  *Elkins*, slip copy, at 13-14; *Mata v. Texas*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001).

Claims involving the mere admissibility of evidence under state law are not cognizable on federal habeas review, unless a specific constitutional right was impeded or the ruling rendered the trial fundamentally unfair.  *See Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998); *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  Elkins does not raise a constitutional challenge to the evidence nor has he demonstrated that

9

admission of the evidence regarding retrograde extrapolation resulted in the denial of a fundamentally fair trial. As noted by the appellate court, although much of the expert testimony on the issue benefitted the state, the expert witness also "candidly admitted that [Elkins's] blood alcohol level at the time of the accident may not have been above the legal limit, even if he had consumed a significant quantity of alcohol just before the accident. Without this testimony, the jury may have viewed the test results as prima facie evidence of [Elkins's] intoxication at the time of the accident."

## II. RECOMMENDATION

Elkins's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until February 6, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th

Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until February 6, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 16, 2008.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE